and that it would have been valid, if then filed, as against bankrupt proceedings; but it is insisted that, as it was not filed until December, it must be regarded, as against creditors and the assignee of the bankrupt, as taking effect from that date. Had it been given in December, for money loaned in August, the mortgagor then being insolvent, and the mortgagee knowing the fact, it would, undoubtedly, have been void as against the assignee; but the mere failure to file it at the time it was executed would not make it invalid, unless intervening rights had accrued by attachment or subsequent conveyance or incumbrance of the property. I regard the case as settled by the opinion of the supreme court, in Sawyer v. Turpin, [91 U. S. 114,] where the court observes, with reference to a similar instrument: "Having bene executed more than four months before the petition in bankruptcy was filed, there is nothing in the case to show that it was invalid. True it was not recorded, and it may be doubted whether it was admissible to record. True no possession was taken under it by the vendee, but for neither of these reasons was it less operative between the parties. It might not have been a protection against attaching creditors, if there had been any, but there were none. It was in the power of Turpin to put it on record any day, if the recording acts applied to such an instrument, and equally within his power to take possession of the property at any time before other rights against it had accrued." In Mitchell v. Black, 72 Mass. [6 Gray,] 100, the court, in speaking of the registration of mortgages, says: "The time when the record shall be made is not specifically described by the statute, though it must, undoubtedly, precede the possession by others subsequently acquiring an interest in the mortgaged property; to prevent it passing to them, it will be sufficient that the record is made at any time before such possession is taken, though it be long after the execution of the mortgage." It was further held, in the first case above cited, that even if there had been an agreement between the mortgagor and mortgagee that the instrument should not be recorded, but should be kept secret, it would be of no importance. I think this case practically determines the one at bar, and that the prayer of the petitioner must be granted.

[NOTE. In re Oliver, Case No. 10,492, states that In re Barman was decided on the strength of Sawyer v. Turpin, 91 U. S. 114, as the supreme court had not then settled the construction to be given to the word "creditors" in the Michigan statutes, but that, the statute having since been construed in Fearey v. Cummings, 41 Mich. 376, 1 N. W. 946, the court will now follow the construction given by the state court.]

BARNABO, (UNITED STATES v.) See Case No. 14,522.

## Case No. 1,000.

### Ex parte BARNARD.

[4 Cranch, C. C. 294.] [1]

Circuit Court, District of Columbia. March Term, 1833.

CONSTITUTIONAL LAW—EMINENT DOMAIN.

1. The act of Maryland of 1785, c. 49, respecting [the taking of land for] private roads or ways, is not repugnant to the constitution of the United States.

2. And [such act] is in force in the county of Washington. D. C.

[Petition by Robert Barnard and William Morton to condemn land for a private way under Act Md. 1785, c. 49. Surveyor's report confirmed.]

The surveyor having laid out a way according to a former order of the court, and having made his report, and a rule having been served on the possessors of the land through which, &c., to show cause, &c.

Mr. R. S. Coxe, for Mr. Mackall, objected.

The act of Maryland of 1785, c. 49, was passed before the amendment of the constitution of the United States, which forbids the taking of private property for public use without just compensation. The act of 1785 does not provide for just compensation, and being repugnant to the constitution of the United States, is void. But this land is not to be taken for public use. It is to be a private way, for private use; and it is not competent for any legislature to take the property of one man and give it to another, even with compensation. By that act, the court, and not the jury, is to ascertain the compensation; which is unconstitutional. Van Horn v. Dorrance, [Case No. 16,857.] Besides, the petitioners have not made out a case of necessity. The old way cannot now be lawfully stopped. It has been opened and used for forty years, and a grant may now be presumed. Aspindall v. Brown, 3 Term R. 265; 2 Dane, Abr. p. 256, c. 79, art. 4; Alban v. Brounsall, Yel. 163; Chichester v. Lethbridge, Willes, 71; Reignolds v. Edwards, Id. 282; Gayetty v. Bethune, 14 Mass. 49; 3 Dane, Abr. p. 250, art. 13; Campbell v. Wilson, 3 East, 294; Dexter v. Hazen, 10 Johns. 246; 3 Dane, Abr. p. 252, arts. 16, 17; 2 Johns. 424; Cincinnati v. White, 6 Pet. [31 U. S.] 431.

Mr. Redin, for the petitioners, referred to the following act of Maryland respecting streets in Georgetown, namely, 1797, c. 56, § 6, and the acts of congress of March 3, 1805, § 12, (2 Stat. 334,) and March 3, 1809, § 4, (2 Stat. 538.) He also cited Greenwood v. Stoner, 3 Har. & J. 435; Howton v. Frearson, 8 Term R. 50; Dutton v. Tayler, 2 Lutw. 1487; Clark v. Cogge, Cro. Jac. 170; Staple v. Heydon, 6 Mod. 3, 4; 1 Rolle, Abr. p. 936, pl. 10.

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Key, on the same side.

The constitutional objection has been overruled in the cases of the Chesapeake & Ohio Canal Co. The act of 1785 has always been acted upon in Maryland.

THE COURT (nem. con.) confirmed the report of the surveyor, and allowed $130 for compensation, namely, 2½ acres at $30, and $55 for fencing.

---

BARNARD, (ADAMS v.) See Case No. 45.

---

## Case No. 1,001.
### BARNARD et al. v. CONGER.
#### [6 McLean, 497.][1]
Circuit Court, D. Michigan. June Term, 1855.

MEASURE OF DAMAGES—CONTRACT OF SALE.

1. Where a person has agreed to deliver a quantity of lumber at specified prices, and he fails to comply with his contract, the plaintiff is entitled to recover in damages the difference in price between the lumber contracted for, and the market price at the place of delivery.

2. If the market price at the place of delivery was as low, or lower, than the price agreed to be paid in the contract, the plaintiff will be entitled to no damages. The rule is, that no damages can be recovered where none have been sustained.

[At law. Action by Barnard and Lockwood against Conger for breach of a contract to deliver certain lumber. Verdict for defendant.]

Mr. Clark, for plaintiffs.
Emmons & Jones, for defendant.

OPINION OF THE COURT. This action is founded upon a contract for the delivery of five hundred thousand feet of lumber, at Albany, in New York, at certain prices stipulated, dated 19th of April, 1854; to be delivered the same year before the close of navigation, of the first and second quality. The defendant was permitted to deliver, at the prices stated, as he might choose. Thirty-two dollars for the clear, per thousand feet, and twenty-four dollars for the second quality. Two hundred thousand feet of said lumber, which may be delivered, shall be counted at two dollars per thousand feet less than the prices above named, in consideration that the said Barnard & Son advanced to said Conger on the contract the sum of three thousand dollars, they charging interest on said advance from the payment, until the money shall be repaid by the delivery of that amount of lumber. The delivery to be made at the plaintiff's wharf in Albany.

It was proved that in the summer and fall of 1854, the market price of clear lumber was thirty-five dollars per thousand feet; twenty-seven dollars per thousand for the second quality. Other witnesses stated that in September and October, 1854, lumber sold, first quality for thirty-four dollars per thousand, and second quality for twenty-four dollars. Boat loads sold, at first quality, thirty-two dollars, second quality, from twenty-two to twenty-three dollars per thousand.

The court instructed the jury, that if lumber embraced by the contract was worth more in the market in Albany than the prices stipulated in the contract to be paid to the defendant at the period within which the lumber was to be delivered, the plaintiff was entitled to recover, by way of damages, the difference. But if the price of lumber in the Albany market was as low or lower than the prices agreed to be paid by the plaintiff, he suffered no damage by the failure of the defendant. If the plaintiff with the money in hand, could, in the market at Albany, purchase lumber at the same price that he had agreed to pay the defendant, he was entitled to no compensation, as he sustained no loss.

A sale of lumber in small quantities or by retail, will not fix the prices in the present case; nor would prices paid for a much larger amount than is named in the contract, fix the price. This would bring down the price too low, while the retail price would place it too high. The true rule will be found in such quantities as provided for in the contract, and if you shall find that a purchase could have been made by the plaintiff, at the time the defendant should have delivered the lumber, at the contract or a less price than that agreed to be paid, at the place of delivery, the plaintiff is entitled to no damages.

The three thousand dollars advanced, with the interest, it is understood will be satisfactorily arranged. The jury found a verdict for the defendant.

---

BARNARD, (DILLON v.) See Case No. 3,915.

---

## Case No. 1,002.
### BARNARD v. FARWELL.
[Cited in Bradley v. Converse, Case No. 1,776. Nowhere reported; opinion not now accessible.]

---

BARNARD, (GIBSON v.) See Case No. 5,389.

---

## Case No. 1,003.
### BARNARD et al. v. HARTFORD, P. & F. R. CO. et al.[1]
Circuit Court, D. Connecticut. Oct. 14, 1878.

EQUITY—PARTIES—ASSIGNEE IN BANKRUPTCY—CROSS BILL.

[1. Under the bankrupt act of 1867, § 2, a circuit court has jurisdiction of a cross bill, filed

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Not previously reported.]